IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

P.F. TECHNOLOGIES, INC.,           )
             Plaintiff,           )
                      )
           vs.           )          Civil Action No. 06-1337
                      )          Judge Ambrose
CONTINENTAL CEMENT CO.,           )          Magistrate Judge Mitchell
             Defendant.           )

REPORT AND RECOMMENDATION

I.      Recommendation

It is respectfully recommended that the motion to dismiss or, in the alternative to transfer for improper venue and lack of personal jurisdiction, submitted on behalf of Defendant (Docket No. 6), be granted and that this action be transferred to the United States District Court for the Eastern District of Missouri, Northern Division, pursuant to 28 U.S.C. § 1406(a).

II.     Report

Plaintiff, P.F. Technologies, Inc. ("PFT"), filed this action against Defendant, Continental Cement Company ("CCC") in the Court of Common Pleas of Lawrence County, Pennsylvania, arising out of a contract entered into by the parties on September 15, 2005, pursuant to which PFT was to construct and operate a Cement Grade Gypsum Processing Facility on CCC's property in Hannibal, Missouri.  Plaintiff asserts claims of breach of contract and unjust enrichment.  Defendant removed the action to this Court on the basis of diversity of citizenship.

Presently before this Court for disposition is a motion to dismiss or, in the alternative, to transfer for improper venue and lack of personal jurisdiction, brought by the Defendant.  For the reasons that follow, the Court should conclude that Plaintiff has failed to establish that personal

jurisdiction may be asserted over Defendant, and Defendant has demonstrated that venue in this district is improper.  Therefore, Defendant's motion should be granted and this action should be transferred to the United States District Court for the Eastern District of Missouri, Northern Division, pursuant to 28 U.S.C. § 1406(a).

Facts

On September 15, 2005, PFT and CCC entered into a Master Material Agreement which provided, inter alia, that PFT would construct a Cement Grade Gypsum Processing Facility on CCC's property in Hannibal, Missouri for the sum of $1,200,000.00.  (Compl. ¶ 4 & Ex. A.) Plaintiff asserts that it has fully performed all of its construction and construction management obligations under the contract, but that CCC has paid it only $500,000.00 and has refused to pay the remaining principal balance on the contract in the amount of $1,003,080.00, or any interest accrued thereon.  (Compl. ¶¶ 6-7, 9, 12.)  Further, Plaintiff alleges that, without cause or provocation, on or about June 12, 2006, CCC cancelled the contract, alleging non-performance on the part of PFT.  (Compl. ¶ 8 & Ex. B.)

Procedural History

Plaintiff initiated this action by filing a complaint in the Court of Common Pleas of Lawrence County, Pennsylvania on September 13, 2006.  Count I alleges that CCC breached its contractual obligations by failing to pay PFT for work it fully performed under the contract. Count II alleges that this conduct constituted unjust enrichment.  Count III alleges that CCC's act of refusing to abide by the contractual provision to take delivery of a minimum of 70,000 tons of cement for a term of five years constituted a breach of the terms of the contract.

Defendant removed the action to this Court on October 5, 2006, and on October 13, 2006,

it filed an Amended Notice of Removal.  The Amended Notice of Removal states that PFT is a Pennsylvania corporation with its principal place of business in New Castle, Pennsylvania; that CCC is a is a limited liability company (LLC) with four members, two of whom are individuals (both residents of Missouri), and the other two are LLCs, one of which (Missouri Materials Company, L.L.C.) has two members (both individuals, who are Missouri residents) and the other of which (J & J Midwest Group, L.L.C.) has ten members, of which nine are individuals (six of whom are residents of Missouri, and the other three are residents of Texas) and the tenth member is another L.L.C. (Patrick C. Dubbert, L.L.C.), whose only member is an individual Missouri resident; and that the amount in controversy exceeds $75,000.00, exclusive of interest and costs. (Docket No. 5 ¶ 4.)  In summary, Plaintiff is a Pennsylvania citizen, Defendant is a citizen of both Missouri and Texas[1] and the jurisdictional amount in controversy is met.  Thus, Defendant asserts jurisdiction based on diversity of citizenship.

On October 13, 2006, Defendant filed a motion to dismiss or, in the alternative, to transfer for lack of personal jurisdiction and improper venue.  It contends that the Court lacks personal jurisdiction over it for claims arising out a contract negotiated and performed in Missouri, that venue in this district is improper and that this action should be dismissed or transferred to the United States District Court for the Eastern District of Missouri, where it could

---

[1]     Every federal court to have addressed the question has concluded that LLCs do not enjoy corporate citizenship.  Rather, they are citizens of all the states of which their members are citizens.  See Pramco, LLC v. San Juan Bay Marina, Inc., 435 F.3d 51, 54-55 (1st Cir. 2006); General Technology Applications, Inc. v. Exro Ltda, 388 F.2d 114, 120 (4th Cir. 2004); Rolling Greens MHP, L.P. v. Comcast SCH Holdings, L.L.C., 374 F.3d 1020, 1022 (11th Cir. 2004) GMAC Commercial Credit LLC v. Dillard Dep't Stores, 357 F.3d 827, 829 (8th Cir. 2004); Handelsman v. Bedford Village Assocs. Ltd. P'ship, 213 F.3d 48, 51-52 (2d Cir. 2000); Cosgrove v. Bartolatta, 150 F.3d 729, 731 (7th Cir. 1998).

have been brought.

Personal Jurisdiction

"Once it is challenged, the burden rests upon the plaintiff to establish personal jurisdiction.  A nexus between the defendant, the forum and the litigation is the essential foundation of *in personam* jurisdiction."  General Elec. Co. v. Deutz AG, 270 F.3d 144, 150 (3d Cir. 2001) (citation omitted).  "The plaintiff must sustain its burden of proof through 'sworn affidavits or other competent evidence.'"  North Penn Gas v. Corning Natural Gas Corp., 897 F.2d 687, 689 (3d Cir. 1990) (quoting Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61, 67 n.9 (3d Cir. 1984)).  The court initially must "accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff," although it can reconsider the issue "if it appears that the facts alleged to support jurisdiction are in dispute," and can conduct an evidentiary hearing to resolve any disputed facts.  Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 142, n.1 (3d Cir. 1992).

There are two alternative ways to establish personal jurisdiction.  In this case, Plaintiff asserts only specific personal jurisdiction, which arises from a defendant's forum-related activities and may be established even where the defendant has not physically appeared in the state but has "'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities."  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472-73 (1985) (citations omitted).  In Burger King the Supreme Court found that the United States District Court for the Southern District of Florida had personal jurisdiction over the defendant, a Michigan resident, who allegedly had breached a franchise agreement with a Florida corporation in failing to make required payments in Florida.  The Court

4

noted that a contract with an out-of-state party alone cannot automatically establish sufficient minimum contacts in the other party's home forum.  However, in that case the "franchise dispute grew directly out of 'a contract which had a substantial connection with that state.'"  Id. at 479 (citation omitted).  The Court stated that "[i]t is these factors–prior negotiations and contemplated future consequences, along with terms of the contract and the parties' actual course of dealing–that must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum."  Id.

After it has been determined that a defendant purposefully established minimum contacts, "these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'"  Id. at 477 (citing International Shoe Co. v. Washington, 326 U.S. 310, 320 (1945)).

The Federal Rules of Civil Procedure authorize a district court to assert personal jurisdiction over a non-resident to the extent permissible under the law of the state where the district court sits.  Fed.R.Civ.P. 4(k)(1)(A).  North Penn Gas, 897 F.2d at 689.  Pennsylvania authorizes its courts to exercise maximum general and specific jurisdiction over corporations. The plaintiff may show specific jurisdiction pursuant to Pennsylvania's long arm statute, 42 Pa. C.S. § 5322(a) by showing that the defendant has engaged in forum-related activities.

Pennsylvania also authorizes exercise of the jurisdiction of its courts over non-residents "to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States."  42 Pa. C.S. § 5322(b).  See Kubik v. Letteri, 614 A.2d 1110, 1114 (Pa. 1992) (following Burger King analysis).

5

Plaintiff alleges breaches of contract by CCC.  "In determining jurisdiction over a breach of contract claim, we must consider the totality of the circumstances, including the location and character of the contract negotiations, the terms of the contract, and the parties' actual course of dealing."  Remick v. Manfredy, 238 F.3d 248, 256 (3d Cir. 2001) (citation omitted).  See also General Elec., 270 F.3d at 150 ("In contract cases, courts should inquire whether the defendant's contacts with the forum were instrumental in either the formation of the contract or its breach.").

In Vetrotex CertainTeed Corp. v. Consolidated Fiber Glass Products Co., 75 F.3d 147 (3d Cir. 1996), Vetrotex, a Pennsylvania seller of fiber glass products, brought suit against Conglas, a California buyer of its products, and the Court of Appeals held that personal jurisdiction was lacking because:

> The only contacts that Conglas had with Pennsylvania consisted of some telephone calls and letters written to Vetrotex in Pennsylvania.  However, this Court has recognized that "informational communications in furtherance of [a contract between a resident and a nonresident] do not establish the purposeful activity necessary for a valid assertion of personal jurisdiction over [the nonresident defendant]."

Id. at 152 (quoting Sunbelt Corp. v. Noble, Denton & Assoc., Inc., 5 F.3d 28, 32 (3d Cir. 1993)). The court distinguished other cases in which the nonresident defendant had actively solicited the contract or initiated the business relationship, sent payments into the forum state, or engaged in extensive post-sale contacts with the forum state.  Id. at 152-53.  In addition, the court refused to consider negotiations that occurred between Vetrotex and Conglas in previous contracts over a decade before, because for purposes of specific personal jurisdiction the only dealings between the parties that are relevant are those related to the disputed contract.  Id. at 153.

In Remick, the court concluded that personal jurisdiction could be asserted over the breach of contract claim brought by a Pennsylvania attorney (Remick) against a former client

6

(Manfredy) who had solicited Remick to represent him in Pennsylvania.  The court noted that:

> Remick's contract claim is comparable to those distinguished in Vetrotex. According to Remick's affidavit, Manfredy sought Remick out by placing a telephone call to Remick's associate Resnick at their office in Philadelphia.  This solicitation eventually resulted in the fee agreement between Remick and Manfredy, which Remick signed in, and Manfredy signed and returned to, Pennsylvania.  The agreement noted that its formality was required by the Pennsylvania Rules of Professional Conduct, suggesting that Manfredy was receiving the benefit of Pennsylvania law under the agreement.  In addition, at least one payment was sent by Manfredy to Remick at his Philadelphia office. Most of the services performed by Remick on behalf of Manfredy were conducted at Remick's Philadelphia office, and Manfredy certainly should have expected as much as he knew that Remick's home office is in Philadelphia.

> Finally, there were repeated "informational communications" during the course of the contractual relationship between Manfredy and Remick with Remick at his Philadelphia office, including the final communication–Manfredy's termination letter of March 2, 1998.  See Grand Entm't Group, Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 482 (3d Cir.1993) ("Mail and telephone communications sent by the defendant into the forum may count toward the minimum contacts that support jurisdiction.").  These facts as a whole involved more entangling contacts than the mere "informational communications" at issue in Vetrotex.

238 F.3d at 256.  In General Electric, the court held that personal jurisdiction was properly asserted over a German corporation that, in its role of guaranteeing its subsidiary's contract with General Electric to manufacture diesel engines, made trips to Pennsylvania and assumed long-term obligations.  270 F.3d at 151-52.

With respect to the facts specific to this case, Mark W. Strieker, Vice President of Finance and Administration for CCC (Strieker Aff. ¶ 1), states that:

> CCC's contract with [PFT] involved property located in Hannibal, Missouri and was to be performed by PFT entirely within the State of Missouri in Hannibal, Missouri.

> The contract with PFT was negotiated entirely in the State of Missouri and PFT's representatives traveled to Missouri to conduct such negotiations and make presentations.

7

The contract with PFT was executed in the State of Missouri.

(Strieker Aff. I ¶¶ 9-11.)

In response, Patrick J. Copple, Sr., the President and sole shareholder of PFT (Copple

Aff. ¶ 1), states as follows:

On or about spring of 2005, CCC solicited the professional design and construction services together with the product manufacturing services of PFT.

On or about September 15, 2005, at PFT's principal offices I executed a Master Materials Agreement ("Contract") on behalf of PFT between PFT and CCC for "the construction and operation of a Cement Grade Processing Facility" in Hannibal, Missouri. The Contract was appended to the Complaint filed with the Court.

The corporate officers who were employed during the negotiation, execution and performance of the Contract were Patrick J. Copple, Jr., Secretary, David Richards, Certified Financial Officer, and Richard Rylott, Director of Engineering & Operations, are domiciled in the western district of Pennsylvania. I believe that they will be material witnesses if a trial of this matter is necessary.

Certain subcontractors, suppliers and vendors who provided expertise, labor, materials, parts and equipment during the performance of the Contract are located in the western district of Pennsylvania. I believe that they will be material witnesses if a trial of this matter is necessary.

For the above reasons, I believe that Pennsylvania is the most appropriate jurisdiction and venue for resolution of the dispute in this matter.

(Copple Aff. ¶¶ 3-7.)[2]

Plaintiff has failed to demonstrate that Defendant's contacts with Pennsylvania are

sufficient for the Court to exercise personal jurisdiction over it. Although PFT states that CCC

[2] Docket No. 17. As Defendant notes, Plaintiff's brief (Docket No. 16) appears to refer to other facts that are not contained in Mr. Copple's affidavit, nor do they have any other support. Statements in a brief not supported by "sworn affidavits or other competent evidence," North Penn Gas, 897 F.2d at 689, are insufficient to satisfy a plaintiff's burden of establishing personal jurisdiction.

soticited PFT to engage it in a contract, the Court of Appeals has held that "[i]t is not significant that one or the other party initiated the relationship.  In the commercial milieu, the intention to establish a common venture extending over a substantial period of time is a more important consideration."  General Elec., 270 F.3d at 151 (citing Carteret, 954 F.2d at 150).  Plaintiff has not disputed Defendant's evidence that the contract was negotiated entirely in the State of Missouri, that PFT's representatives traveled to Missouri to conduct negotiations and make presentations and that CCC executed the contract in Missouri.

With respect to PFT's assertion that "certain" subcontractors, suppliers and vendors are located in Pennsylvania, Mr. Strieker responds that:

> Pennsylvania vendors were insignificant in the totality of the Project.  Only a small portion of the material and equipment used on the project at termination ($79,520.94, less than six percent) of the material and equipment for the Project (partially completed) was supplied by four Pennsylvania vendors selected and engaged by PFT and delivered to the Project in Missouri.  Two of the four Pennsylvania vendors invoiced less than $3,200.
>
> The vast majority (more than 70%) of the material and equipment supplied and all of the of the installation labor (except for one Iowa contractor) for the completed Project was supplied by companies and individuals residing in Missouri....

(Strieker Aff. II ¶¶ 6-7.)[3]  The Court need not resolve the dispute (to the extent there is one) between the statements of Mr. Copple and Mr. Strieker because the uncontroverted evidence demonstrates that: 1) the contract involved property located in Hannibal, Missouri and was to be performed by PFT solely within that state; 2) the contract was negotiated entirely in Missouri and PFT's representatives traveled there to conduct negotiations and make presentations; and 3) CCC executed the agreement in Missouri.

---

[3]      Docket No. 20-3.

The domicile of the PFT corporate officers who were employed during the negotiation, execution and performance of the contract and who may be called as witnesses at trial is not germane to the question of whether personal jurisdiction can be asserted over CCC.  Finally, Mr. Copple's statement that he believes Pennsylvania is the "most appropriate jurisdiction" for resolution of this case is irrelevant.  Either PFT can demonstrate that CCC has sufficient contacts with Pennsylvania for personal jurisdiction to be asserted over it or PFT cannot meet this burden.  For the reasons explained above, PFT has not met its burden.  Because Plaintiff has failed to make out a prima facie case of personal jurisdiction, the Court need not address whether fair play and substantial justice would render jurisdiction unreasonable.  Vetrotex, 75 F.3d at 153 n.9.

Venue

The Court of Appeals for the Third Circuit has held that the defendant challenging venue bears the burden of demonstrating that it is improper.  Myers v. American Dental Ass'n, 695 F.2d 716, 724 (3d Cir. 1982).  In a case based on diversity of citizenship, venue is proper: 1) where defendants "reside"; 2) where "a substantial part of the events or omissions giving rise to the claim occurred"; or 3) where "any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought."  28 U.S.C. § 1391(a).

None of the members of CCC resides in Pennsylvania, nor do the facts of this case suggest that a substantial part of the events or omissions giving rise to the claim occurred in Pennsylvania.  Rather, as explained above, a substantial part of the events occurred in Hannibal, Missouri.  Finally, as explained below, the Eastern District of Missouri, Northern Division, is a district in which this action could have been brought and therefore § 1391(a)(3) does not apply.

10

Thus, Defendant has demonstrated that venue in this district is improper.

Transfer under § 1406(a)

Section 1406 provides that:

> The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

28 U.S.C. § 1406(a).  Transfer under this statute is proper even though the court in which the action was filed lacks personal jurisdiction over the defendant.  Goldlawr, Inc. v. Heiman, 369 U.S. 463, 466 (1962).[4]

The Eastern District of Missouri would have personal jurisdiction over CCC's members, either because they are Missouri citizens or because of actions they engaged in within Missouri that are related to this case.  It would also be an appropriate venue because a substantial part of the events giving rise to the claims occurred there.

Hannibal, Missouri, is located in Marion County and federal court is held in Hannibal for the Eastern District of Missouri, Northern Division.  28 U.S.C. § 105(a)(2).  Therefore, the Eastern District of Missouri, Northern Division, is a federal court where this action could have been brought.

Rather than suffer dismissal, this action should be transferred to the United States District Court for the  Eastern District of Missouri, Northern Division, pursuant to § 1406(a).

---

[4]     Plaintiff cites 28 U.S.C. § 1404(a) and argues that its choice of forum is entitled to great weight and that transfer would not serve the interests of convenience or fairness.  However, the Court of Appeals has held that § 1404(a) provides for transfer only if venue is proper in the original forum.  As venue is improper in this district, Plaintiff's choice of venue is not entitled to any weight and the only issue is whether the case should be dismissed or transferred pursuant to § 1406(a).  See Jumara v. State Farm Ins. Co., 55 F.3d 873, 878 (3d Cir. 1995).

For these reasons, it is recommended that the motion to dismiss or, in the alternative to transfer for improper venue and lack of personal jurisdiction, submitted on behalf of Defendant (Docket No. 6) be granted and that this action be transferred to the United States District Court for the Eastern District of Missouri, Northern Division, pursuant to 28 U.S.C. § 1406(a).

Within thirteen (13) days of being served with a copy, any party may serve and file written objections to this Report and Recommendation.  Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto.  Failure to file timely objections may constitute a waiver of any appellate rights.

Respectfully submitted,

s/Robert C. Mitchell
ROBERT C. MITCHELL
United States Magistrate Judge

Dated: December 7, 2006

12